UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE EX PARTE APPLICATION OF JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY,

Petitioner,

Case No.: ________________

for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings.
-----------------------------------------------------------x

**JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM J.P. MORGAN CHASE & CO., CITIBANK, N.A., THE BANK OF NEW YORK MELLON, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND BANK OF AMERICA, N.A., FOR USE IN FOREIGN PROCEEDINGS**

1. JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY ("BPC") respectfully submits this *ex parte* application pursuant to 28 U.S.C. § 1782 ("Section 1782") for this Court's assistance to conduct discovery for use in foreign proceedings (the "Application"). In support of the Application, BPC submits a Memorandum of Law and the Declaration of Renée L. Jarusinsky, together with the exhibits attached thereto.

2. The Application seeks the issuance of document subpoenas to J.P. Morgan Chase & Co. ("J.P. Morgan"), Citibank, N.A. ("Citibank"), The Bank of New York Mellon ("BNY Mellon"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), and Bank of America, N.A. ("Bank of America"), collectively the "Correspondent Banks," in connection with foreign proceedings in Panama and/or other fora with jurisdiction over Continental Trading Resources S.A. ("CTR") and/or its assets for recognition and enforcement of an arbitration award (the "Foreign Proceedings"), which is described in detail herein and in the Memorandum of Law submitted in support of this Application. The arbitration award was issued by the London Court of International Arbitration (the "LCIA") located in London, United Kingdom in favor of BPC

against CTR for nonpayment. Because CTR is registered in Panama, BPC has commenced proceedings in Panama seeking recognition and enforcement of the arbitration award, and will be a party to any other Foreign Proceedings. BPC invokes Section 1782 to seek this Court's assistance, as BPC is seeking to discover where CTR's assets are located in order to determine where to bring the Foreign Proceedings, and banking records from the Correspondent Banks of CTR's transactions contain information that is both relevant and important to the Foreign Proceedings.

3. This Court is empowered to issue the subpoenas because the Application satisfies the three statutory requirements under Section 1782, as explained in the accompanying Memorandum of Law: (i) the Correspondent Banks are located in and/or conduct correspondent banking within this District; (ii) the subpoenas seek discovery for use in the Foreign Proceedings; and (iii) BPC is an "interested person" in the Foreign Proceedings.

4. Additionally, the four discretionary factors applicable to Section 1782 weigh in favor of granting the Application, as explained further in the enclosed Memorandum of Law: (i) the Correspondent Banks are not a party in or participant to the Foreign Proceedings; (ii) the court in Panama and other fora wherein the Foreign Proceedings will occur will be receptive to judicial assistance from a U.S. court; (iii) BPC is not attempting to circumvent foreign proof-gathering restrictions; and (iv) the discovery requested is not intrusive or burdensome.

5. The alleged facts supporting the Application are set forth below.

<u>The Contract for the Sale of Potash and the Breach of that Contract</u>

6. BPC is a potash supply company formed in 2013 and registered under the laws of the Republic of Belarus. BPC supplies potash, a key fertilizer nutrient containing potassium used for crops' yields, water regulation, and disease resistance, of the highest quality to a majority of

developed and developing countries around the world. It is headquartered in Minsk, the Republic of Belarus and it has representatives in Beijing, China, New Delhi, India, and Curitiba, Brazil.

7. CTR is a Panamanian registered company that specializes in the import and export of agricultural products including coffee, sugar, crude palm oil, palm kernel oil, sesame oil and sesame seeds, and mung bean and fertilizers. CTR is registered in Panama, but where its assets are located and/or where its main business operations take place are currently unknown to BPC.

8. On August 15, 2022, BPC agreed to sell, and CTR agreed to purchase, 26,000 metric tons +/- 10% of potash. The Sales Contract was signed by both representatives of BPC and CTR. The parties also entered into several amendment agreements to the Sales Contract.

9. On August 25, 2022, BPC shipped 26,338 metric tons of potash to CTR on board the M/V "Princess Oui," and CTR accepted the shipment.

10. On August 29, 2022, both parties signed an Act of Transfer referencing the Sales Contract and confirming that CTR accepted the potash.

11. BPC issued three invoices, demanding payment of the total amount of $13,959,140.

12. CTR paid $7,400,250 of the amount owed to BPC, but failed to pay the remaining amount of $6,558,890 owed under the Sales Contract and was therefore in breach of the Sales Contract.

13. The debt in the amount of $6,558,890 was expressly admitted by CTR by signing of the Act of Reconciliation dated November 30, 2022.

<u>The Procedural History of BPC's Arbitration Arising from CTR's Breach of the Sales Contract</u>

14. On January 16, 2025, as a result of CTR's breach and consistent with the terms of the Sales Contract, BPC initiated an LCIA arbitration against CTR. The arbitral tribunal was composed of three distinguished arbitrators: Rebecca Sabben-Clare KC (London), Andrey Panov (Dubai), and Liliana Veru Torres (London).

15. While BPC was represented, appeared, and participated in the arbitration, CTR was neither represented nor appeared in the arbitration.

16. On April 11, 2025, the LCIA issued its first procedural order, Procedural Order No. 1, directing BPC to bring the arbitration proceeding to CTR's attention by sending the Request for Arbitration and related papers to CTR's last known email address, last known business address, and by any other means of communication used during the business relationship.

17. By April 30, 2025, BPC confirmed it had complied with the LCIA's Procedural Order No. 1 and the LCIA concurred that CTR was properly served and notified about the arbitration.

18. On May 23, 2025, the LCIA issued its second procedural order, Procedural Order No. 2, directing BPC to serve the Statements of Case and proposing a schedule giving CTR 28 days for production of its Statement of Defense after service of BPC's Statement of Claim.

19. On June 10, 2025, BPC complied with the LCIA's Procedural Order No. 2, serving its Statement of Case along with accompanying materials on CTR. However, CTR never filed its Statement of Defense by the due date, or at all. On this date, BPC also applied for Interim Measures consistent with the LCIA's Rules.

20. On June 12, 2025, the LCIA, via email, directed CTR to serve its reply, in response to the application for Interim Measures, within two weeks; an order with which CTR failed to comply.

21. On July 30, 2025, the LCIA dismissed BPC's application for Interim Measures.

22. Consistent with its own rules, on September 3, 2025, the LCIA proceeded with the arbitration award because it found that CTR was provided a reasonable and an abundant opportunity to participate in the arbitration, and it chose not to participate.

23. On September 10, 2025, the LCIA requested that BPC submit its schedule of costs for the award, an order BPC complied with by September 15, 2025.

24. The LCIA then offered CTR seven days to respond to the schedule, however it once again failed to do so.

25. On November 6, 2025, the LCIA issued its Final Award in BPC's favor.

26. Under section 70 of the English Arbitration Act 1996, CTR was entitled to challenge the LCIA award before the English state courts but did not do so.

The LCIA's Final Award

27. After having reviewed the Sales Contract and the accompanying relevant documents, based on the totality of the evidence, the LCIA concluded that a binding contract existed between BPC and CTR based on the plain text of the contract, the parties' conduct, and corresponding documents evincing the existence of a contract.

28. The LCIA also concluded that BPC performed under the contract because it shipped the goods as required, and, as a result, BPC is entitled to payment. The only variation the LCIA found from the contractual specification to the delivery was with regards to the color of the goods wherein the contract stated the goods were "pink," but the certificate of quality stated they were "from pink to reddish brown." Ultimately, the LCIA concluded this was a distinction without merit because CTR accepted the goods and the time had passed to bring a counterclaim in relation to the quality of the goods.

29. As a result, the LCIA concluded that BPC is owed by CTR, per the Sales Contract, the outstanding amount of $6,558,890.

30. The LCIA also awarded to BPC $1,635,050.41 in interest on the outstanding amount owed up to the date of the award.

31. The LCIA further awarded to BPC $1,617.26 per day in interest on the outstanding amount owed until the date of the payment of that amount.

32. The LCIA also ordered CTR to also pay €17,520 in BPC's legal costs with 9% per year interest, which is equivalent to €4.32 per day.

33. Last, the LCIA ordered CTR to reimburse BPC 48,600.05 Great British Pounds ("GBP") in arbitration costs and dismissed all other requested claims and reliefs.

The Requested Discovery Is For Use in the Foreign Proceedings

34. Through this Application, BPC is now seeking financial records, specifically correspondent banking records of CTR's transactions, from the Correspondent Banks involving CTR as either the sender or recipient.

35. To date, CTR has neither paid the outstanding amount owed under the Sales Contract resulting from its breach, nor has it complied with the LCIA's decision, ordering it to pay to BPC the outstanding contractual amount in addition to interest and other fees, as mentioned above.

36. The requested records will assist BPC in identifying: (a) evidence supporting the pending exequatur proceeding in Panama, and any subsequent proceeding there to enforce the arbitral award should it be recognized; (b) where CTR has assets sufficient (including accounts receivable and shares in subsidiaries) to cover the amount awarded to BPC for purposes of bringing an action to enforce the award; and (c) serve as evidence for anticipated disputes over CTR's jurisdictional objections and arguments that they lack an interest in assets that could be used to satisfy the LCIA award.

37. Thus far, BPC has taken or intends to take the following steps: (1) on May 6, 2026, BPC filed an exequatur application in Panama, where CTR is registered, seeking recognition and

a declaration of enforceability of the LCIA's award in its favor, with the Fourth Chamber of General Business of the Supreme Court of Justice of Panama, and has been referred to the Attorney General in Panama for the issuance of the opinion contemplated by Panamanian procedure; (2) BPC will also institute an action in jurisdictions outside of Panama to recognize and enforce the award if necessary; and (3) when such an award is recognized and declared enforceable, either by Panama or another jurisdiction, BPC intends to commence enforcement proceedings before the competent courts in any jurisdiction in which CTR's assets or assets subject to execution may be located to satisfy BPC's Award and the resulting judgment; and (4) hiring the undersigned to file this Application.

38. BPC seeks these records in the pursuit of the Foreign Proceedings to recognize and enforce the award in a forum that will have jurisdiction over any entity holding assets belonging to CTR.

39. Although CTR is registered in Panama, BPC is uncertain as to whether CTR has sufficient assets in Panama. In order to institute other Foreign Proceedings, BPC must determine where CTR's assets are located.

40. Because the Sales Contract was negotiated in U.S. Dollars and payments were made in U.S. Dollars, the Correspondent Banks, which are based or hold major operations in New York City and which conduct the most correspondent banking transactions in U.S. Dollars, are well positioned to have transaction records that would show with whom or where CTR routinely transacts, so BPC can assert its enforcement claim in any foreign jurisdiction where assets are located.

41. In addition, some of the transaction records in BPC's possession documenting the payments CTR made under the sales contract identify Citibank, Deutsche Bank, and Bank of America as the correspondent banks for those transactions.

42. Moreover, CTR is a trader, therefore, its principal assets are likely accounts receivable, meaning claims that CTR has against its contractual counterparties in different jurisdictions. The requested discovery will reveal CTR's counterparties' identities and locations. Further, the requested discovery will reveal the dividends paid to CTR by subsidiaries in Panama or other jurisdictions. The shares in subsidiaries and dividends are also assets against which BPC can seek enforcement to satisfy the LCIA award.

43. In addition, the requested discovery will reveal CTR's shareholders and other controlling persons (who may receive payments from CTR or provide financing to CTR) against whom BPC may bring an action for CTR's debts.

44. CTR has not, to date, paid any portion of LCIA's award to BPC, and there is no reason to believe that, when CTR's award is recognized by the Panamanian courts or a subsequent jurisdiction, CTR will comply.

45. Based on the facts above, BPC therefore respectfully submits that this Court expeditiously grant the Application.

WHEREFORE, BPC respectfully requests that this Court:

a. Grant the Application for an Order pursuant to Section 1782 to conduct discovery for use in the Foreign Proceedings *ex parte*;

b. Enter the Proposed Order accompanying this Application;

c. Grant BPC leave, pursuant to Section 1782, to serve the Correspondent Banks with the subpoenas and proposed riders attached to the Declaration of Renée L. Jarusinsky as Exhibits D and E;

d. Order the Correspondent Banks to comply with the subpoenas issued in this case in accordance with the Federal Rules of Civil Procedure and the Rules of this Court; and

e. Grant any and all other further relief to BPC as deemed just and proper.

Dated: September 21, 2026

Respectfully submitted,

/s/Renée L. Jarusinsky
Renée L. Jarusinsky
Ifedapo E. Benjamin
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
rjarusinsky@fordobrien.com
ibenjamin@fordobrien.com

*Counsel for Applicant*
*JOINT STOCK COMPANY*
*BELARUSIAN POTASH COMPANY*