UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE *EX PARTE* APPLICATION OF JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY,

Petitioner,

for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings.
-----------------------------------------------------------x

Case No. XX-XX-XXX

**MEMORANDUM OF LAW IN SUPPORT OF JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY'S *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE DISCOVERY FROM J.P. MORGAN CHASE & CO., CITIBANK, N.A., THE BANK OF NEW YORK MELLON, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND BANK OF AMERICA, N.A., FOR USE IN FOREIGN PROCEEDINGS**

Renée L. Jarusinsky
Ifedapo E. Benjamin
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
Facsimile: (212) 256-1047
rjarusinsky@fordobrien.com
ibenjamin@fordobrien.com

Counsel for Petitioner
*JOINT STOCK COMPANY BELARUSIAN POTASH COMPANY*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ..........................................................................................................2

I. The Contract for the Sale of Potash and the Breach of that Contract ...........................2

II. The Procedural History of BPC's Arbitration Arising from CTR's Breach of the Sales Contract....................................................................................................3

III. The LCIA's Final Award ...........................................................................5

IV. The Requested Discovery Is For Use in the Foreign Proceedings................................6

ARGUMENT................................................................................................................8

A. The Application Meets the Three Statutory Requirements..........................................8

i. The Correspondent Banks Can Be "Found" in the Southern District of New York ..........................................................................................................8

ii. The Requested Discovery is "For Use" in a "Foreign Proceeding" ................11

iii. BPC is an "Interested Person" .............................................................13

B. The Four Discretionary Factors Weigh in Favor of the Application ..........................13

i. The Correspondent Banks are Not Participants in the Foreign Proceedings ...14

ii. The Foreign Tribunals may be Receptive to U.S. Judicial Assistance ............14

iii. The Application Does Not Circumvent the Foreign Proof-Gathering Restrictions ..........................................................................................16

iv. The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules of Civil Procedure..................................19

C. Granting the Application Ex Parte is Appropriate and Fair........................................20

CONCLUSION...........................................................................................................21

# TABLE OF AUTHORITIES

Cases Page(s)

*Allied Aviation, LLC v. ASIG Holdings Corp.*,
2012 WL 13137013 (M.D. Fla. May 1, 2012) ..... 15

*Application of Esses*,
101 F.3d 873 (2d Cir. 1996) ..... 8

*Automotive US, Inc., et al. v. Luxshare LTD*,
596 U.S. 619 (2022) ..... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) ..... 17

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ..... 14

*Gorsoan Ltd v. Bullock*,
652 F. App'x 7 (2d Cir. 2016) ..... 14

*Gushlak v. Gushlak*,
486 F. App'x. 215 (2d Cir. 2012) ..... 20

*In re Accent Delight Int'l Ltd.*,
791 F. App'x 247 (2d Cir. 2019) ..... 14

*In re Al-Attabi*,
2021 WL 4027021 (S.D.N.Y. Sept. 3, 2021) ..... 9

*In re Anadarko China Holdings 2 Co.*,
2025 WL 3481827 (S.D.N.Y. Dec. 1, 2025) ..... 10

*In re Application for an Order Permitted Metallgesellschaft AG to Take Discovery*,
121 F.3d 77 (2d Cir. 1997) ..... 17

*In re Application of Mammoet Salvage, B.V.*,
2025 WL 3009507 (S.D.N.Y. Oct. 28, 2025) ..... 9

*In re Aso*,
2019 WL 2345443 (S.D.N.Y. June 3, 2019) ..... 10

*In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*,
2024 WL 4169550 (S.D.N.Y. Sept. 12, 2024) ..... 19

*In re B&C KB Holding GmbH*,
2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023) ..... 13

*In re Bank J. Sarasin AG*,
2025 WL 3171876 (S.D.N.Y. Nov. 13, 2025) ... 14

*In re Brookfield Infrastructure Partners L.P.*,
2025 WL 3215607 (S.D.N.Y. Nov. 18, 2025) ... 13

*In re Clerici*,
481 F.3d 1324 (11th Cir. 2007) ... 15

*In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ... 15

*In re GMJ Asset Mgmt. Co., Inc.*,
2022 WL 4547445 (S.D.N.Y. Sept. 29, 2022) ... 8, 11

*In re Golden Meditech Holdings Ltd.*,
2024 WL 5247285 (S.D.N.Y. Dec. 30, 2024) ... 10

*In re Grupo Unidos por el Canal, S.A.*,
2014 WL 5456520 (N.D. Cal. Oct. 27, 2014) ... 16

*In re Guriev*,
2025 WL 2381702 (S.D.N.Y. Aug. 15, 2025) ... 14

*In re Hansainvest Hanseatische Inv.-GmbH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018) ... 12

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ... 20

*In re Itau Unibanco S/A – Nassau Branch*,
2025 WL 918462 (S.D.N.Y. Mar. 26, 2025) ... 14, 17

*In re Kuwait Ports Auth.*,
2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ... 12

*In re Litasco SA*,
2023 WL 8700957 (S.D.N.Y. Dec. 15, 2023) ... 10

*In re Oasis Core Investments Fund Ltd.*,
2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) ... 8

*In re Ord. To Take Discovery for Use in a Foreign Proceeding Pursuant To 28 U.S.C., § 1782*, 2025 WL 1446876 (S.D.N.Y. May 20, 2025) ... 15

*In re Resource Int'l Holdings CV*,
2025 WL 1360893 (S.D.N.Y. May 9, 2025) ... 9

*In re Safra*,
2022 WL 3584541 (S.D.N.Y. Aug. 22, 2022) ..... 15

*In Re SBK ART LLC*,
168 F.4th 68 (2d Cir. 2026) ..... 16

*In re Tiberius Grp. AG*,
2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ..... 17

*In re Top Matrix Holdings Ltd.*,
2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ..... 17

*In re West African Mineral Trading Ltd.*,
2024 WL 3862293 (S.D.N.Y. Aug. 19, 2024) ..... 9, 10

*In re Zarzur*,
2024 WL 81517 (S.D.N.Y. Jan. 8, 2024) ..... 20

*In re Zouzar Bouka; Vision Indian Ocean S.A.*,
637 F. Supp. 3d 74 (S.D.N.Y. 2022) ..... 12, 13, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ..... Passim

*Jiangsu Steamship Co.*,
2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ..... 11

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020) ..... 8, 11

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ..... 8, 16, 17, 19

*Sampedro v. Silver Point Cap., L.P.*,
818 F. App'x 14 (2d Cir. 2020) ..... 17, 18

Statutes

28 U.S.C. § 1782 ..... Passim

Rules

Federal Rules of Civil Procedure Rule 19 ..... 1

Federal Rules of Civil Procedure Rule 26 ..... 19

Federal Rule of Civil Procedure Rule 45(c)(3) ..... 20

Other Authorities

Inter-American Convention on International Commercial Arbitration,
Jan. 30, 1975, S. Treaty Doc. No. 97-12 ........................................................................ 16

## PRELIMINARY STATEMENT

This is Joint Stock Company Belarusian Potash Company's ("BPC") first *ex parte* application for discovery under 28 U.S.C. § 1782 (the "Application") in this Court. BPC submits this Section 1782 application seeking discovery from J.P. Morgan Chase & Co. ("J.P. Morgan"), Citibank, N.A. ("Citibank"), The Bank of New York Mellon ("BNY Mellon"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), and Bank of America, N.A. ("Bank of America"), collectively (the "Correspondent Banks,") all of which are headquartered and/or conduct correspondent banking for international transactions in New York City, for use in foreign proceedings in Panama and/or other fora with jurisdiction over Continental Trading Resources S.A. ("CTR") and/or its assets for recognition and enforcement of an arbitration award issued by the London Court of International Arbitration (the "LCIA") located in London, United Kingdom. (the "Foreign Proceedings").

The basis for the Application is as follows: on August 15, 2022, BPC entered into a contract to sell 26,000 metric tons of potash to CTR (the "Sales Contract"). BPC performed and shipped the potash as the Sales Contract dictated. BPC even made several amendments to the contract to accommodate CTR. As required by the Sales Contract, BPC issued three invoices demanding payment of the total amount of $13,959,140. Although CTR paid $7,400,250 of the amount owed, it failed to pay the remaining $6,558,890 owed under the contract and effectively breached the Sales Contract between the parties. As a result of CTR's breach, and as required by the Sales Contract, BPC instituted an action before the LCIA to recover the unpaid amounts owed by CTR under the Sales Contract. While BPC was represented, appeared, and participated in the arbitration, CTR did not appear nor were they represented.

During the arbitration, the LCIA issued several procedural orders, but CTR time and time again failed to comply. One such order directed BPC to bring the arbitration proceeding to CTR's attention, which BPC did. Another such order directed BPC to serve CTR with the Statement of Case and propose a schedule, giving CTR 28 days to produce its Statement of Defense after BPC serves its Statement of Claim. Yet again, BPC complied while CTR evaded the LCIA's order and never filed its Statement of Defense or anything at all. The LCIA further required CTR to serve its reply in response to an application for Interim Measures. However, CTR did not comply. After months of arbitration, and with no appearance or compliance from CTR, the LCIA issued an award in favor of BPC concluding that BPC was owed by CTR, per the Sales Contract, the outstanding amount of $6,558,890. Additionally, the LCIA awarded BPC the following: (1) $1,635,050.41 in interest, (2) $1,617.26 in daily interest on the outstanding amount owed until the date of payment, (3) €17,520 in BPC's legal costs with 9% yearly interest, which is equivalent to €4.32 per day, and (4) it ordered CTR to reimburse BPC 48,600.05 Great British Pounds ("GBP") in arbitration costs and dismissed all other requested claims and reliefs. For these reasons and for purposes of enforcement of the LCIA arbitration award and as set forth more fully below, BPC requests that the Court grant the Application.

## BACKGROUND

### I. The Contract for the Sale of Potash and the Breach of that Contract

BPC is a potash supply company formed in 2013 and registered under the laws of the Republic of Belarus. (Application at ¶ 6). BPC supplies potash, a key fertilizer nutrient containing potassium used for crops' yields, water regulation, and disease resistance, of the highest quality to a majority of developed and developing countries around the world. (*Id.*). It is headquartered in Minsk, the Republic of Belarus and it has representatives in Beijing, China, New Delhi, India, and Curitiba, Brazil. (*Id.*).

CTR is a Panamanian registered company that specializes in the import and export of agricultural products including coffee, sugar, crude palm oil, palm kernel oil, sesame oil and sesame seeds, and mung bean and fertilizers. (*Id.* at ¶ 7). CTR is registered in Panama, but where its assets are located and/or where its main business operations take place are currently unknown to BPC. (*Id.*).

On August 15, 2022, BPC agreed to sell, and CTR agreed to purchase, 26,000 metric tons +/- 10% of potash (*Id.* at ¶ 8). The Sales Contract was signed by both representatives of BPC and CTR. (*Id.*). The parties also entered into several amendment agreements to the Sales Contract. (*Id.*)

On August 25, 2022, BPC shipped 26,338 metric tons of potash to CTR on board the M/V "Princess Oui," and CTR accepted the shipment. (*Id.* at ¶ 9). On August 29, 2022, both parties signed an Act of Transfer referencing the Sales Contract and confirming that CTR accepted the potash. (*Id.* at ¶ 10).

BPC issued three invoices, demanding payment of the total amount of $13,959,140. (*Id.* at ¶ 11). CTR paid $7,400,250 of the amount owed to BPC, but failed to pay the remaining amount of $6,558,890 owed under the Sales Contract and was therefore in breach of the Sales Contract. (*Id.* at ¶ 12). The debt in the amount of $6,558,890 was expressly admitted by CTR by signing of the Act of Reconciliation dated November 30, 2022. (*Id.* at ¶ 13).

## II. The Procedural History of BPC's Arbitration Arising from CTR's Breach of the Sales Contract

On January 16, 2025, as a result of CTR's breach and consistent with the terms of the Sales Contract, BPC initiated an LCIA arbitration against CTR. (*Id.* at ¶ 14). The arbitral tribunal was composed of three distinguished arbitrators: Rebecca Sabben-Clare KC (London), Andrey Panov (Dubai), and Liliana Veru Torres (London). (*Id.*)

While BPC was represented, appeared, and participated in the arbitration, CTR was neither represented nor appeared in the arbitration. (*Id.* at ¶ 15). On April 11, 2025, the LCIA issued its first procedural order, Procedural Order No. 1, directing BPC to bring the arbitration proceeding to CTR's attention by sending the Request for Arbitration and related papers to CTR's last known email address, last known business address, and by any other means of communication used during the business relationship. (*Id.* at ¶ 16). By April 30, 2025, BPC confirmed it had complied with the LCIA's Procedural Order No. 1 and the LCIA concurred that CTR was properly served and notified of the arbitration. (*Id.* at ¶ 17). On May 23, 2025, the LCIA issued its second procedural order, Procedural Order No. 2, directing BPC to serve the Statements of Case and proposing a schedule giving CTR 28 days for production of its Statement of Defense after service of BPC's Statement of Claim. (*Id.* at ¶ 18). On June 10, 2025, BPC complied with the LCIA's Procedural Order No. 2, serving its Statement of Case along with accompanying materials on CTR. (*Id.* at ¶ 19). However, CTR never filed its Statement of Defense by the due date, or at all. (*Id.*). On this date, BPC also applied for Interim Measures consistent with the LCIA's Rules. (*Id.*).

On June 12, 2025, the LCIA, via email, directed CTR to serve its reply in response to the application for Interim Measures within two weeks; an order with which CTR failed to comply. (*Id.* at ¶ 20). On July 30, 2025, the LCIA dismissed BPC's application for Interim Measures. (*Id.* at ¶ 21). Consistent with its own rules, on September 3, 2025, the LCIA proceeded with the arbitration award because it found that CTR was provided a reasonable and an abundant opportunity to participate in the arbitration, and it chose not to participate. (*Id.* at ¶ 22). On September 10, 2025, the LCIA requested that BPC submit its schedule of costs for the award, an order BPC complied with by September 15, 2025. (*Id.* at ¶ 23). The LCIA then offered CTR seven

days to respond to the schedule, however it once again failed to do so. (*Id.* at ¶ 24). On November 6, 2025, the LCIA issued its Final Award in BPC's favor. (*Id.* at ¶ 25).

Under section 70 of the English Arbitration Act 1996, CTR was entitled to challenge the LCIA award before the English state courts but did not do so. (*Id.* at ¶ 26).

## III. The LCIA's Final Award

After having reviewed the Sales Contract and the accompanying relevant documents, based on the totality of the evidence, the LCIA concluded that a binding contract existed between BPC and CTR based on the plain text of the contract, the parties' conduct, and corresponding documents evincing the existence of a contract. (*Id.* at ¶ 27). The LCIA also concluded that BPC performed under the contract because it shipped the goods as required, and, as a result, BPC is entitled to payment.[1] (*Id.* at ¶ 28).

Accordingly, the LCIA concluded that BPC is owed by CTR, per the Sales Contract, the outstanding amount of $6,558,890. (*Id.* at ¶ 29). The LCIA also awarded to BPC $1,635,050.41 in interest on the outstanding amount owed up to the date of the award. (*Id.* at ¶ 30). The LCIA further awarded to BPC $1,617.26 per day in interest on the outstanding amount owed until the date of the payment of that amount. (*Id.* at ¶ 31). The LCIA also ordered CTR to also pay €17,520 in BPC's legal costs with 9% yearly interest, which is equivalent to €4.32 per day. (*Id.* at ¶ 32). Last, the LCIA ordered CTR to reimburse BPC 48,600.05 Great British Pounds ("GBP") in arbitration costs and dismissed all other requested claims and reliefs. (*Id.* at ¶ 33).

[1] The only variation the LCIA found from the contractual specification to the delivery was with regards to the color of the goods wherein the contract stated the goods were "pink," but the certificate of quality stated they were "from pink to reddish brown." (*Id.* at ¶ 28). Ultimately, the LCIA concluded this was a distinction without merit because CTR accepted the goods and the time had passed to bring a counterclaim in relation to the quality of the goods. (*Id.*)

## IV. The Requested Discovery Is For Use in the Foreign Proceedings

1. Through this Application, BPC is now seeking financial records, specifically correspondent banking records of CTR's transactions, from the Correspondent Banks involving CTR as either the sender or recipient. (*Id.* at ¶ 34). To date, CTR has neither paid the outstanding amount owed under the Sales Contract resulting from its breach, nor has it complied with the LCIA's decision, ordering it to pay to BPC the outstanding contractual amount in addition to interest and other fees, as mentioned above. (*Id.* at ¶ 35). The requested records will assist BPC in identifying: (a) evidence supporting the pending exequatur proceeding in Panama, and any subsequent proceeding there to enforce the arbitral award should it be recognized; (b) where CTR has assets sufficient (including accounts receivable and shares in subsidiaries) to cover the amount awarded to BPC for purposes of bringing an action to enforce the award; and (c) serve as evidence for anticipated disputes over CTR's jurisdictional objections and arguments that they lack an interest in assets that could be used to satisfy the LCIA award. (*Id.* at ¶ 36).

Thus far, BPC has taken or intends to take the following steps: (1) on May 6, 2026, BPC filed an exequatur application in Panama, where CTR is registered, seeking recognition and a declaration of enforceability of the LCIA's award in its favor, with the Fourth Chamber of General Business of the Supreme Court of Justice of Panama, and has been referred to the Attorney General in Panama for the issuance of the opinion contemplated by Panamanian procedure; (2) BPC will also institute an action in jurisdictions outside of Panama to recognize and enforce the award if necessary; and (3) when such an award is recognized and declared enforceable, either by Panama or another jurisdiction, BPC intends to commence enforcement proceedings before the competent courts in any jurisdiction in which CTR's assets or assets subject to execution may be located to

satisfy BPC's Award and the resulting judgment; and (4) hiring the undersigned to file this Application. (*Id.* at ¶ 37).

BPC seeks these records in the pursuit of the Foreign Proceedings to recognize and enforce the award in a forum that will have jurisdiction over any entity holding assets belonging to CTR. (*Id.* at ¶ 38). Although CTR is registered in Panama, BPC is uncertain as to whether CTR has sufficient assets in Panama. (*Id.* at ¶ 39). In order to institute other Foreign Proceedings, BPC must determine where CTR's assets are located. (*Id.*). Because the Sales Contract was negotiated in U.S. Dollars and payments were made in U.S. Dollars, the Correspondent Banks, which are based or hold major operations in New York City and which conduct the most correspondent banking transactions in U.S. Dollars, are well positioned to have transaction records that would show with whom or where CTR routinely transacts, so BPC can assert its enforcement claim in any foreign jurisdiction where assets are located. (*Id.* at ¶ 40). In addition, some of the transaction records in BPC's possession documenting the payments CTR made under the sales contract identify Citibank, Deutsche Bank, and Bank of America as the correspondent banks for those transactions. (*Id.* at ¶ 41); (Transaction Reports attached as Ex. C).

Moreover, CTR is a trader, therefore, its principal assets are likely accounts receivable, meaning claims that CTR has against its contractual counterparties in different jurisdictions. (*Id.* at ¶ 42). The requested discovery will reveal CTR's counterparties' identities and locations. (*Id.*). Further, the requested discovery will reveal the dividends paid to CTR by subsidiaries in Panama or other jurisdictions. (*Id.*). The shares in subsidiaries and dividends are also assets against which BPC can seek enforcement to satisfy the LCIA award. (*Id.*)

In addition, the requested discovery will reveal CTR's shareholders and other controlling persons (who may receive payments from CTR or provide financing to CTR) against whom BPC

may bring an action for CTR's debts. (*Id.* at ¶ 43). CTR has not, to date, paid any portion of LCIA's award to BPC, and there is no reason to believe that, when CTR's award is recognized by the Panamanian courts or a subsequent jurisdiction, CTR will comply. (*Id.* at ¶ 44).

## ARGUMENT

For the reasons set forth below, BPC respectfully submits that this Court should grant the Application because: (1) it meets each of the three statutory requirements set forth in Section 1782; (2) the four discretionary factors established by controlling case law weigh in favor of granting the Application; and (3) it is appropriate and fair for it to be granted *ex parte*.

### A. The Application Meets the Three Statutory Requirements

Section 1782(a) requires an applicant to satisfy the following three statutory requirements: (1) the individual or company from whom discovery is sought must reside in or be found in the district in which the application is brought; (2) the discovery sought is for use in foreign proceedings; and (3) the applicant is an "interested person." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)); *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996). As set out below, BPC satisfies each of the three statutory requirements.

#### i. The Correspondent Banks Can Be "Found" in the Southern District of New York

Under the first statutory requirement, an applicant can establish that an individual or company resides in the Southern District of New York (the "District") if its office is located within the District. *In re Oasis Core Investments Fund Ltd.*, 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024) (finding that a corporation was "found" in the Southern District of New York because its principal place of business was located in New York City); *In re GMJ Asset Mgmt. Co., Inc.*, 2022 WL 4547445, at *3 (S.D.N.Y. Sept. 29, 2022) (finding that a corporation was "found" in the

Southern District of New York, as it had an office in New York City that served as its U.S. headquarters); *In re Al-Attabi*, 2021 WL 4027021, at *2 (S.D.N.Y. Sept. 3, 2021) (same).

Here, four of the five Correspondent Banks, Citibank, Deutsche Bank, J.P. Morgan, and BNY Mellon all maintain their headquarters in this District. For example, on their respective public websites, these four Correspondent Banks expressly state that they are headquartered in New York City. *First*, J.P. Morgan announced on October 21, 2025, that it opened "its new global headquarters at 270 Park Avenue" in New York, New York 10017. *Second*, Citibank lists its "Main Address" or "Headquarters" at 388 Greenwich Street, New York, New York 10013. *Third*, BNY Mellon states on its public website that its "Corporate Headquarters" is located at 240 Greenwich Street, New York, New York, 10286. *Fourth*, Deutsche Bank states on its website that it is headquartered at One Columbus Circle, New York, New York, 10019.[2] Given their New York headquarters, these four Banks can be "found" in this District. *See In re Application of Mammoet Salvage, B.V.*, 2025 WL 3009507, at *8, *12 (S.D.N.Y. Oct. 28, 2025) (finding J.P. Morgan Chase and Citibank to be found in this District); *In re Resource Int'l Holdings CV*, 2025 WL 1360893, at *1-2, *4 (S.D.N.Y. May 9, 2025) (finding Citibank, Deutsche Bank, J.P. Morgan Chase, and Bank of New York Mellon to be found in this District); *In re West African Mineral Trading Ltd.*, 2024 WL 3862293, at *1-2 (S.D.N.Y. Aug. 19, 2024) (finding Citibank, Deutsche Bank, BNY

---

[2] *Contact*, DEUTSCHE BANK USA, https://country.db.com/usa/contact (last visited Aug. 4, 2026); *Contact Us*, CITI, https://depositaryreceipts.citi.com/adr/contact/contact.aspx?pageId=8&subpageid=119 (last visited Aug. 4, 2026); *Our local expertise*, CITI, https://www.citigroup.com/global/about-us/global-presence/united-states (last visited Aug. 4, 2026); *JP MorganChase Celebrates Grand Opening of New Global Headquarters at 270 Park Avenue*, JPMORGANCHASE, https://www.jpmorganchase.com/newsroom/stories/jpmc-celebrates-new-global-hq-at-270-parkave (last visited Aug. 4, 2026); *BNY Offices in the United States*, BNY, https://www.bny.com/corporate/global/en/about-us/locations/north-america/united-states.html (last visited Aug. 4, 2026).

Mellon, and J.P. Morgan Chase to be found in this District); *In re Litasco SA*, 2023 WL 8700957, at *1 (S.D.N.Y. Dec. 15, 2023) (finding Citibank, Deutsche Bank, Bank of New York Mellon, and J.P. Morgan Chase to be found in this District); *In re Aso*, 2019 WL 2345443, at *3 (S.D.N.Y. June 3, 2019) (finding Citibank, JPMorgan Chase, and Bank of America to be found in this District).

As for Bank of America, according to its public website, it receives incoming international wire transactions in U.S. Dollars at 222 Broadway, New York, New York 10038, and also maintains its regional headquarters at One Bryant Park, New York, New York 10036, which is one of five of its regional hubs in the United States, including its main headquarters in Charlotte, North Carolina.[3] Thus, Bank of America can sufficiently be "found" in the Southern District of New York. "In the Section 1782 context, where an applicant seeks discovery of transactions and bank records, courts have found a sufficient basis for specific personal jurisdiction where the respondent banks 'maintain offices in this District where they act as correspondent or intermediary banks for U.S. dollar-denominated wires transfers involving international banks.'" *In re Anadarko China Holdings 2 Co.*, 2025 WL 3481827, at *4 (S.D.N.Y. Dec. 1, 2025) (citation omitted).[4]

---

[3] *Connect with our offices around the world*, BANK OF AMERICA, https://business.bofa.com/content/boaml/en_us/locations.html#unitedStates (last visited Aug. 4, 2026); *see also* Matthew Preston, *Bank of America Locks Up Nearly All of One Bryant Park in 20-Year Deal*, Mar. 24, 2026, https://www.commercialsearch.com/blog/bank-of-america-locks-up-nearly-all-of-one-bryant-park-in-20-year-deal/

[4] These allegations distinguish this case from two others in which a court in this District (Hon. Dale E. Ho) declined to exercise specific jurisdiction over Bank of America for purposes of a Section 1782 application. *See In re Golden Meditech Holdings Ltd.*, 2024 WL 5247285, at **4-5 (S.D.N.Y. Dec. 30, 2024); *West African Mineral Trading Ltd.*, 2024 WL 3862293, at *3. In those cases, the petitioners did not link Bank of America's performance of correspondent banking to its New York operations and failed to identify any specific transaction that may have been routed through the Bank. *See In re West African Mineral Trading*, 2024 WL 3862293, at *3 (petitioner "fail[ed] to connect Bank of America's performance of correspondent banking services to the fact that they maintain branches in this District"); *Golden Meditech*, 2024 WL 5247285, at *5 (petition failed to point to an alleged transaction from the foreign country that "could have plausibly been

Accordingly, this Court has specific jurisdiction over Bank of America for purposes of this Application and the power to direct it to produce the subpoenaed documents. Therefore, each of the Correspondent Banks meets the first statutory requirement relating to residence, and that element is satisfied.

### ii. The Requested Discovery is "For Use" in a "Foreign Proceeding"

To satisfy the second statutory requirement, an applicant must demonstrate that the discovery sought is for use in a foreign proceeding. *Automotive US, Inc., et al. v. Luxshare LTD*, 596 U.S. 619, 623 (2022) (finding that "foreign proceedings" for purposes of Section 1782 includes only proceedings before governmental or intergovernmental adjudicative bodies). The statutory requirement here is interpreted broadly and does not require the foreign proceedings to even be pending or imminent. *In re GMJ Asset Mgmt. Co., Inc.*, 2022 WL 4547445, at *4 (S.D.N.Y. Sep. 29, 2022) (explaining that "the fact that these actions have not yet been initiated is not a barrier to discovery under the statute" and that under the Supreme Court's jurisprudence the proceedings need not be "pending or imminent" and "*an intent to bring proceedings forward*" satisfies this prong) (emphasis added) (internal citation and quotation marks omitted).

Other courts within this district have also broadly interpreted this prong, giving credence to that proceedings need not be "pending or imminent" to satisfy this prong and can be reasonably contemplated. *See*, *e.g.*, *Mangouras*, 980 F.3d at 100 ("To qualify as a 'foreign proceeding' within the meaning of the statute, the proceeding . . . need not be 'pending' or 'imminent'; rather, it is necessary only that 'a dispositive ruling' be 'within reasonable contemplation.'") (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)); *Jiangsu Steamship Co.*, 2015

routed through" Bank of America's New York office). That is not the case here, as Bank of America's website (cited above) explicitly states that incoming international wires in U.S. Dollars are received at the Bank's 222 Broadway, New York, NY location.

WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (stating that the second statutory requirement extends to foreign proceedings that are reasonably contemplated); *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F. Supp. 3d 74, 86 (S.D.N.Y. 2022) (granting petitioner's Section 1782 application and explaining that "[a]n intent by an applicant to file a lawsuit once it obtains additional information" is "not necessarily fatal to a Section 1782 application") (internal citation and quotation marks omitted); *In re Kuwait Ports Auth.*, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (granting petitioner's Section 1782 application and stating that an application is reasonably contemplated when "the applicant . . . ha[s] more than a subjective intent to undertake some legal action, and instead . . . provide[s] some objective indicium that the action is being contemplated.") (internal citation and quotation marks omitted). *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249-50 (S.D.N.Y. 2018) (same).

Given the facts set forth above, BPC undoubtedly meets that standard of "reasonably contemplated" for the foreign proceedings here because it has engaged in or plans to engage in several actions which objectively indicate its intent to commence a foreign proceeding. To date, the steps BPC has taken include: (i) issuing invoices to CTR demanding payment owed under the Sales Contract (*Id.* at ¶ 11); (ii) upon CTR's breach in its failure to pay under the Sales Contract, on January 16, 2025, commencing the arbitration before the LCIA as required under the Sales Contract (*Id.* at ¶ 14); (iii) appearing for and participating in the arbitration before the LCIA including complying with all of the LCIA's orders (*Id.* at ¶ 15); (iv) winning before the LCIA and obtaining a ruling ordering CTR to pay BPC the millions of dollars owed under the Sales Contract and awarding BPC interest and other fees (*Id.* at ¶ 27-33); (v) on May 6, 2026, filing an exequatur application in Panama seeking recognition and a declaration of enforceability of the LCIA's award in its favor (*Id.* at ¶ 37); and (vi) hiring the undersigned to file this Application (*Id.*).

BPC has and continues to take all the necessary steps to enforce the award. BPC's intent is evident. *In re Zouzar Bouka*, 637 F. Supp. 3d at 86. Therefore, BPC fully satisfies the "for use" or second statutory element.

**iii. BPC is an "Interested Person"**

To meet the third statutory requirement, the applicant must demonstrate that it is an "interested person," which is interpreted broadly by courts to include a litigant, a potential litigant, or even a victim. *Intel Corp.*, 542 U.S. at 256 (stating that there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested persons' who may invoke [Section] 1782" but that the text of Section 1782 "plainly reaches beyond the universe of persons designated [as] litigant[s]"); *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 3215607, at *6 (S.D.N.Y. Nov. 18, 2025) (explaining that an "interested person" in a foreign proceeding can either "plainly include[] litigants" or "other persons who possess a reasonable interest in obtaining the assistance" or one who has "a significant role in the process") (internal citation and quotation marks omitted); *In re B&C KB Holding GmbH*, 2023 WL 1777326, at *3 (S.D.N.Y. Feb. 6, 2023) (finding that an applicant that was the alleged victim of a fraud and had a right to submit evidence in foreign criminal proceedings was an "interested person" for purposes of Section 1782).

As expressed above, BPC was undeniably awarded millions of dollars and is a litigant in the Foreign Proceedings in Panama and/or elsewhere wherein it intends to seek recognition and enforcement of its arbitral award. Therefore, the third statutory element is met.

**B. The Four Discretionary Factors Weigh in Favor of the Application**

The four discretionary factors set out in the U.S. Supreme Court's decision in *Intel* strongly weigh in favor of granting the Application. Those discretionary factors include: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings; (2) the nature

of the foreign tribunal and the receptivity of the foreign government or court abroad to U.S. federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 250 (2d Cir. 2019); *Gorsoan Ltd v. Bullock*, 652 F. App'x 7, 8-9 (2d Cir. 2016). As set out below, each of the four discretionary factors weighs in favor of the Application.

**i. The Correspondent Banks are Not Participants in the Foreign Proceedings**

The Correspondent Banks will neither be a party nor participants in the Foreign Proceedings. *In re Bank J. Sarasin AG*, 2025 WL 3171876, at *2 (S.D.N.Y. Nov. 13, 2025) (finding that the first discretionary factor weighed in favor of the application because discovery was sought from a company that was not a party to the foreign proceedings at issue); *In re Guriev*, 2025 WL 2381702, at *2 (S.D.N.Y. Aug. 15, 2025) (finding that because a party from whom information was sought was not a participant in pending foreign proceedings, the first discretionary factor weighed in favor of discovery); *In re Itau Unibanco S/A – Nassau Branch*, 2025 WL 918462, at *8 (S.D.N.Y. Mar. 26, 2025) (same). None of the Correspondent Banks is or will be a party to the recognition action in Panama or any other Foreign Proceedings. Therefore, the first discretionary factor strongly weighs in favor of granting the Application.

**ii. The Foreign Tribunals may be Receptive to U.S. Judicial Assistance**

A district court should find this factor weighs in favor of granting the Application absent specific directions from the foreign forum that it would reject evidence obtained with the aid of Section 1782. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (stating that a district court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," for instance, proof "embodied in a forum

country's judicial, executive or legislative declarations that specifically address[es] the use of evidence gathered under foreign procedures"); *In re Safra*, 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government"); *In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (stating that the "law on this factor is clear: District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance") (internal citation and quotation marks omitted). When the "district court has no evidence suggesting opposition from the foreign tribunal" then this factor should count as "neutral or slightly [in] favor" of the applicant. *In re Zouzar Bouka*, 637 F. Supp. 3d at 89.

Here, the courts in Panama, where BPC has commenced its action, do not prohibit or discourage evidence obtained with the aid of a Section 1782 application from being used in proceedings. In fact, courts routinely find that this second *Intel* factor weighs in favor of Section 1782 applications that seek evidence "for use" in Panama or before Panamanian courts. *See*, *e.g.*, *In re Ord. To Take Discovery for Use in a Foreign Proceeding Pursuant To 28 U.S.C. § 1782*, 2025 WL 1446876, at *6 (S.D.N.Y. May 20, 2025) (stating the "second *Intel* factor supports granting the application" because respondent "ha[d] not offered authoritative proof, and the Court is not aware of any proof, that Panamanian Courts generally reject evidence obtained with the aid of section 1782."); *In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007) (affirming grant of Section 1782 application, in part because "there is nothing . . . to suggest that the district court should have declined to grant the § 1782 application based on the nature of the foreign tribunal or the character of the proceedings in Panama"); *Allied Aviation, LLC v. ASIG Holdings Corp.*, 2012 WL

13137013, at *2 (M.D. Fla. May 1, 2012) (granting Section 1782 application for use in Panama, as "[t]here is no indication that the court in Panama would not be receptive to a[n] order permitting movants to seek the bid package from a nonparty in the United States"); *see also In re Grupo Unidos por el Canal, S.A.*, 2014 WL 5456520, at *3 (N.D. Cal. Oct. 27, 2014) (granting Section 1782 application for use in an international arbitration involving two Panamanian companies pertaining to an underlying breach of contract). Moreover, both Panama and the United States are signatories to the Panama Convention, which provides for the recognition and enforcement of arbitral awards. *See* Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, S. Treaty Doc. No. 97-12, O.A.T.S. No. 42, 14 I.L.M. 336. Based on sources available to Panamanian counsel, there is no indication that any provision of Panamanian law or any decision of a Panamanian court prohibits the submission or consideration of evidence obtained pursuant to Section 1782, provided that such evidence complies with authentication, translation, and other requirements. (Panama Declaration at ¶ 10 attached as Ex. A).

Moreover, as explained above, BPC may institute further Foreign Proceedings in other jurisdictions. Although BPC is not currently aware of which jurisdictions will be involved, there are no grounds to believe that the relevant foreign courts will not be receptive to U.S. judicial assistance. Therefore, the second discretionary factor weighs in favor of granting the Application.

#### iii. The Application Does Not Circumvent the Foreign Proof-Gathering Restrictions

The third discretionary factor does not amount to a "foreign-discoverability requirement." *In Re SBK ART LLC*, 168 F.4th 68, 83 (2d Cir. 2026); *see also Mees*, 793 F.3d at 303. In other words, the evidence requested does not need to be discoverable in the foreign proceedings for a Section 1782 application to be granted. *See Intel*, 542 U.S. at 261 (explaining that "[w]hile comity and parity concerns may be important as touchstones for a district court's exercise of discretion in

particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of [Section] 1782(a)"); *Mees*, 793 F.3d at 303 (stating that "the availability of the discovery in the foreign proceedings should not be afforded undue weight"); *In re Application for an Order Permitted Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (noting that the third discretionary factor is "not meant to authorize the denial of discovery pursuant to [Section] 1782 solely because such discovery is unavailable in the foreign court"). Rather, the "proof gathering restrictions" in the third discretionary factor are implicated "[o]nly where … materials being sought are privileged or otherwise prohibited from being discovered or used." *In re Tiberius Grp. AG*, 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020).

Under the third *Intel* factor analysis, a court need not determine whether the requested discovery would be admissible for use in the foreign proceedings. *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 17 (2d Cir. 2020) (stating that the Second Circuit's precedents make clear that "discovery need not be admissible to be for use in a litigation, as there is no statutory basis for such a requirement") (internal citation and quotation marks omitted); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting that "requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such comparisons of that order can be fraught with danger") (internal citation and quotation marks omitted). Further, an applicant need not first seek the discovery from the foreign tribunal where proceedings are held before pursuing a Section 1782 application. *In re Itau Unibanco S/A - Nassau Branch*, 2025 WL 918462, at *9 (S.D.N.Y. Mar. 26, 2025) (explaining that "the law is clear that a party seeking discovery pursuant to Section 1782 need not first seek discovery from the foreign tribunal"); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) (stating that "failure to exhaust all remedies does not demonstrate an

attempt to circumvent foreign restrictions"). The law deems material "useful," even if a foreign jurisdiction would not permit them to be entered in the record. Under applicable law, materials produced in a Section 1782 action need not be admissible in a foreign proceeding to be discoverable under the statute. *Sampedro*, 818 F. App'x at 17.

Here, BPC is seeking correspondent banking records from the Correspondent Banks, which are based or hold major operations in New York City, which conduct most correspondent banking transactions in U.S. Dollars, and some of which have served as correspondent banks for CTR's payments to BPC. (Application at ¶ 40). These banks are well positioned to possess transaction records showing with whom or where CTR routinely transacts, so BPC can assert its enforcement claim in that foreign jurisdiction (*Id.*). The materials sought are not privileged or otherwise prohibited from being used in Panama or other fora with jurisdiction over CTR, and the materials sought "for use" in the relevant jurisdictions would not circumvent foreign proof-gathering restrictions, and BPC intends to abide by the laws of the foreign jurisdictions because its sole aim is to enforce the award issued by the LCIA. (Ex. A at ¶ 10).

Moreover, nothing about BPC's application here elicits bad faith. In fact, every action BPC has taken elicits a good faith effort to collect what is owed to it by CTR. *First*, upon discovering CTR's breach, BPC sent CTR invoices demanding payment. (Application at ¶ 11). *Second*, after CTR failed to pay, BPC, per the terms of the Sales Contract, commenced the arbitration proceeding before the LCIA to collect the money owed. (*Id.* at ¶ 14). *Third*, at the arbitration, BPC appeared, participated, and complied with all of the LCIA's orders; BPC eventually won an award in millions of dollars owed to it by CTR, including interest and fees. (*Id.* at ¶ 15-33).

Recently, on May 6, 2026, BPC filed an exequatur application before the Fourth Chamber of General Business of the Supreme Court of Justice of Panama, seeking recognition and a

declaration of enforceability of the LCIA award, which has been referred to the Attorney General of Panama for the issuance of the corresponding opinion. The filing of the exequatur application constitutes the appropriate procedure prescribed by Panamanian law for seeking recognition and enforceability of a foreign arbitral award. (Ex. A at ¶ 2; Exequatur Application attached as Ex. B). The action for recognition and enforcement in Panama, therefore, is not an attempt to circumvent Panamanian law, but rather an attempt to fully comply with it. (Ex. A at ¶ 11). And BPC intends to, based on where CTR's assets are located and with whom it does business, bring further Foreign Proceedings in those jurisdictions to have the award recognized and enforced. (Application at ¶ 37). Accordingly, this factor weighs in favor of the Application.

**iv. The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules of Civil Procedure**

The fourth discretionary factor is concerned with whether the requested discovery sought by the Section 1782 application is unduly intrusive or burdensome, and this is determined by applying the standards of Rule 26 of the Federal Rules of Civil Procedure. *Intel*, 542 U.S. at 265; *Mees*, 793 F.3d at 302. In this context, Rule 26 requires that the materials be "proportional to the needs of the case, considering the importance of the issues . . . the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, 2024 WL 4169550, at *14 (S.D.N.Y. Sept. 12, 2024). The Second Circuit has instructed that it is "far preferable for a district court to reconcile whatever misgiving it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302.

Here, BPC's discovery request is neither unduly intrusive nor burdensome and is important to BPC. *First*, BPC seeks a single category of documents: correspondent banking records involving

CTR as either the sender or recipient of funds. (Application at ¶ 34). *Second*, this single category of discovery is important to discover: (i) evidence supporting the pending exequatur proceeding in Panama, and any subsequent proceeding there to enforce the arbitral award should it be recognized (Ex. A. at ¶ 9; Application at ¶ 36); (ii) where CTR maintains significant assets (including accounts receivable and shares in subsidiaries) sufficient to cover the arbitration award; and (ii) where CTR's shareholders and other controlling persons (who may hold shares in CTR, receive payments from CTR and finance CTR) are located against whom BPC may bring an action for CTR's debts. (*Id.* at ¶ 36). Therefore, the fourth discretionary factor also weighs in favor of granting the Application.

### C. Granting the Application *Ex Parte* is Appropriate and Fair

In addition to BPC satisfying all of the statutory requirements and having the discretionary factors weigh in its favor, granting the Application *ex parte* would be consistent with the plain language of Section 1782(a). The Second Circuit has recognized that granting applications under Section 1782 *ex parte* does not violate due process and that it is common practice to do so. *Gushlak v. Gushlak*, 486 F. App'x. 215, 217 (2d Cir. 2012) (explaining that "it is neither uncommon nor improper for district courts to grant applications made pursuant to [Section] 1782 *ex parte*" and a "respondent's due process rights are not violated because he can later challenge discovery requests by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)"); *In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018) (stating that "this court has decided appeals from motions to quash *ex parte* [Section] 1782 subpoenas without identifying any impropriety in the *ex parte* nature of the [Section] 1782 application"); *In re Zarzur*, 2024 WL 81517, at *1 (S.D.N.Y. Jan. 8, 2024) (noting that district courts "routinely grant [Section 1782] petitions *ex parte*"). Thus, it is entirely appropriate for this Court to grant the Application *ex parte*.

## CONCLUSION

For the reasons set forth above, BPC respectfully requests the Court to issue an Order granting the Application and authorizing BPC to serve J.P. Morgan, Citibank, BNY Mellon, Deutsche Bank, and Bank of America with the subpoenas and proposed riders attached to the Declaration of Renée L. Jarusinsky as Exhibits D and E directing the Correspondent Banks to produce the requested discovery in its possession, custody, or control.

Dated: September 21, 2026

Respectfully submitted,

/s/ Renée L. Jarusinsky
Renée L. Jarusinsky
Ifedapo E. Benjamin
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
Facsimile: (212) 256-1047
rjarusinsky@fordobrien.com
ibenjamin@fordobrien.com

*Counsel for Petitioner*
*JOINT STOCK COMPANY*
*BELARUSIAN POTASH COMPANY*